REXFORD G. TUGWELL, GOVERNOR OF PUERTO RICO, ETC., Complainant and Appellant, *v.* MANUEL A. BARRETO, MAYOR OF MAYAGÜEZ, Respondent and Appellee.

No. 16.—Argued June 27, 1947.—Decided July 7, 1947.

---

[1] Cf. *G. H. Hammond Company* v. *Diego Agüeros & Co.*, 30 P.R.R. 567; and *Topeka Flour Mill Co.* v. *La Constancia*, 39 P.R.R. 561.

Luis Negrón Fernández, Attorney General, José C. Aponte, Special General Prosecuting Attorney, and Guillermo A. Gil, Assistant Attorney General, for appellant. José Rafael Gelpí and Mario Figueroa del Rosario for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Once more the impeachment against the Mayor of Mayagüez is brought to our consideration. Until now, and notwithstanding the efforts of the Governor, it has not been possible to have the Municipal Assembly of that city hold a hearing in connection with all the charges and render a decision on the merits.

Some time ago, a private citizen preferred charges against the Mayor of Mayagüez, and the Municipal Assembly, after hearing the evidence, exonerated the respondent. Pursuant to § 29 of the Municipal Law, the Mayor and the Governor only can appeal to this Court for a review of the decision of the Assembly in cases of impeachment against the Mayor. For this reason, on October 11, 1945, the Governor filed against the Mayor, in the Municipal Assembly, a set of charges which we shall copy in the course of this opinion. In the hearing of these charges, the Assembly dismissed them at respondent's behest on the ground that the decision rendered in the complaint filed by the private citizen constituted res judicata. The Governor appealed to this Court. The decision of the Municipal Assembly was reversed on December 13, 1945, and the case remanded "with instructions to conduct a hearing on the charges brought by the Governor." Tugwell, Governor, v. Barreto, 65 P.R.R. 469.

Notwithstanding the fact that the mandate had been sent by this Court to the Municipal Assembly since January 29, 1946, the new hearing was not held until May 26, 1947. As soon as the Assembly began the hearing, the Mayor, through

his attorneys, served on counsel for the Governor a new answer and a demurrer to the first four charges. After the parties were heard the demurrer was granted by an eight-to-five-vote.

The charges demurred to were stricken out and after denying a motion for reconsideration filed by counsel for the Governor, petitioner's evidence in support of the fifth charge was heard. After hearing the evidence, the respondent moved for a recess; but on meeting again and before the Mayor proceeded to introduce his evidence, one of the Assembly-men moved the Assembly to decide that the evidence filed by the Governor did not show sufficient cause for removal and consequently that the Mayor should be exonerated as to the fifth charge, and that the respondent be released from introducing any evidence in his defense.[1] The Assembly so decided by a majority and from this decision the petitioner has taken the present appeal.

In view of the delay to which this matter has been subjected on the part of the Municipal Assembly, and considering the importance of the charges presented, we set the hearing of the appeal for the 27th of the last month.[2] On June 26 the respondent filed a motion seeking the dismissal of the appeal and on that date he filed his brief.

█ The motion for dismissal is predicated on the fact that when the notice of appeal was filed the Honorable Jesús T. Piñero, Governor of Puerto Rico, was absent from the Island. For this reason, it is urged, he lacked authority to bring the appeal, since the authority devolved on the Honor-

---

[1] Counsel for the Mayor lay great emphasis on the fact that they insisted in offering their evidence to contradict the Governor's. Be that as it may, this decision of the Municipal Assembly favored him because at any rate it prevents this Court from rendering the decision that should have been rendered by the Municipal Assembly on the merits of the evidence as to said fifth charge.

[2] Counsel for the Mayor did not appear at this hearing, but two minutes before the session began they filed a motion submitting the case on the merits of the briefs filed.

able Manuel A. Pérez, who at that time was acting Governor of Puerto Rico by appointment of the President of the United States.[3]

The grounds of this motion lack merit. It suffices to say that the Honorable Jesús T. Piñero did not cease as Governor of Puerto Rico because he should have left for the United States. There was no legal reason why the proceeding should not continue in his name, in his official capacity.

■ Respondent raised in his brief two additional grounds, for the dismissal, to wit:

(a) That the notice of appeal was not validly served on the Municipal Assembly and on the respondent; and

(b) That there is not before this Court a valid and authentic record of the evidence introduced before the Municipal Assembly.

It suffices to examine the affidavit of service of the notice of appeal, sworn to by Attorney Guillermo A. Gil, in order to conclude that said notice was validly served on the Municipal Assembly and on the respondent.[4]

■ It is further alleged that the notice of appeal was not served within the term to appeal and that the envelope containing the notice for respondent's Attorney, Mr. Gelpí, was addressed to Attorney José Enrique Gelpí, while his true name is "José Rafael Gelpí"; that it was not addressed

---

[3] This motion was accompanied by a certificate from the Executive Secretary, showing that the Honorable Manuel A. Pérez was Acting Governor of Puerto Rico from May 19 until June 9, 1947 at three o'clock PM.

[4] The affidavit of service of notice of appeal read thus:

"I, GUILLERMO A. GIL, being duly sworn, depose and state:—

"That my name is as aforesaid, of legal age, married, Assistant Attorney. General and resident of San Juan, Puerto Rico.

"That I am one of the attorneys for the Honorable Governor of Puerto Rico, petitioner-appellant in this proceeding; that on this day I personally deposited in the post office of San Juan, fifteen envelopes duly registered and sealed, having paid the postage in its entirety. That said envelopes were addressed to the following persons in the city of Mayagüez where they all reside now: Mr. Eduardo A. Ruiz, as President of the Municipal Assembly of Mayagüez; Mr. Emilio Forestier Gregory, as Municipal Secretary of Mayagüez and at the same time Secretary of said Municipal Assembly; Attorney

to his office nor to his residence, but to the post office box of his father, Attorney José Rosario Gelpí.

Challenging the averments of this motion the attorneys for the Governor filed affidavits of the clerk who wrote the address on the envelope, of the Postmaster of San Juan and the Postmaster of Mayagüez tending to prove that said envelope was addressed to José R. Gelpí and placed in the box of José Rafael Gelpí in Mayagüez. Any way, respondent's attorney as well as the Municipal Assembly received a copy of the notice of appeal and this fact cures any defect in the manner in which the notice was addressed.

■ As to whether the notice was received within the term granted for appeal the rule in this jurisdiction is to the effect that service by mail is completed by deposit in the mail. Rule 5(b) of Civil Procedure. *Serra* v. *Municipal Court,* 49 P.R.R. 528 and *Ex parte Bithorn,* 53 P.R.R. 556.[5]

■ We shall now turn to consider the ground for dismissal predicated on the lack of a transcript of the evidence approved by the Municipal Assembly.

In impeachment cases, the Chairman as well as the other members of the Municipal Assembly constitute the tribunal. Consequently, the transcript of the evidence should be approved by the tribunal in full or a quorum thereof and not by its Chairman with the exclusion of the other members.

---

José Rafael Gelpí, in this capacity as one of the attorneys for the respondent Mayor; and to the Municipal Assemblymen of Mayagüez: Messrs. Marcel Courtier, Carlos Mercader, Pedro Vicenty, Teresa L. Bacó Velazco, Juan Luciano Lallave, Faustino J. Perdomo, José Cuesta Urrutia, Félix Castillo, Pedro Vélez, Fernando del Toro, Pedro Barbosa and José A. Cesany; that each one of said envelopes contained a true copy of the preceding notice of appeal and also a true copy of a statement of grounds of fact and law in support of the appeal, which statement is attached to the preceding notice of appeal; that between the city of San Juan and that of Mayagüez there is a regular and daily mail service under the control of the United States of America and that this notice was made through the post office because all the persons served reside in the city of Mayagüez and the Attorneys of the petitioner-appellant reside in San Juan, which is a different city distant from the city of Mayagüez.''

[5] The same principle prevailed under § 322 of the Code of Civil Procedure.

At the hearing for the approval of the transcript of the evidence before the Chairman, the respondent objected to the jurisdiction of the chairman to approve the transcript and announced that he had some amendments to submit, but that he would do so before the whole assembly. Defendant's objection was overruled and he now seeks that the appeal be dismissed as to said fifth charge because we do not have before us a transcript of the evidence duly approved by the Municipal Assembly.

We agree with the respondent in that the approval of the transcript of the evidence by the Chairman is not valid. Consequently, we cannot consider said transcript for the purpose of deciding whether the evidence in support of the fifth charge is sufficient. This being so, the appeal is dismissed as to said charge.

█ As to the demurrer against the first four charges we do not need the transcript of the evidence. The record contains the charges, the demurrer, its grounds and the decision rendered by the Assembly granting it. Therefore, we shall now discuss the demurrer as to the first four charges which are as follows:

### "First Charge

"You, Manuel A. Barreto, acting as Mayor of Mayagüez, on December 12, 1944, without holding a public auction, as provided by subdivision 5 of Section 8 of the Municipal Law, leased to Francisco P. Cintrón the public square of the Municipality of Mayagüez and its adjacent streets and the public streets of Wards Balboa and Playa of the same municipality to be used in the patronal festival of said city which was held from January 22, 1945, to February 2, 1945.

### "Second Charge

"You, Manuel A. Barreto, acting as Municipal Mayor of Mayagüez, received and allowed to be received on December 12, 1944, by Matilde Nadal Ramírez and Miguel A. Yañez the amount of FIVE THOUSAND DOLLARS AND FOUR CENTS ($5,000.04) from Mr. Francisco P. Cintrón as lease rental of the public square of Mayagüez and its adjacent streets and the streets of wards Balboa and Playa and

·you did not deposit, nor cause to be deposited said amount, which is the property of the Municipality of Mayagüez in the municipal treasury, in violation of Section 3(a) of the Regulations relative to Municipal Accounting, approved by the Governor of Puerto Rico on November 9, 1936, by virtue of Section 20 of the Organic Act and Section 68 of the Municipal Law.

## "THIRD CHARGE

"You, Manuel A. Barreto, acting as Mayor of Mayagüez, permitted and authorized that the amount of FIVE THOUSAND DOLLARS AND FOUR CENTS ($5,000.04) which was paid to the Municipality of Mayagüez on December 12, 1944, by Francisco P. Cintrón as lease ·rental of the public square of Mayagüez and adjacent streets and streets of wards Balboa and Playa of said municipality during the period the patronal festival was celebrated, that is, from January 22, 1945, to February 2, 1945, be spent in other attentions not pertinent to the legitimate expenditures of the Municipality of Mayagüez and without the authorization of the Municipal Assembly and in violation of the Rules of the Insular Auditor.

## "FOURTH CHARGE

"You, Manuel A. Barreto, acting as Mayor of the Municipality of Mayagüez, accepted out of the municipal funds, which were the proceeds of the lease rental of the public square and adjacent streets of the Municipality of Mayagüez and the streets of Wards Balboa and Playa of said Municipality, the following amounts of money which were the proceeds of the lease rental mentioned in the first charge:

"(a) ONE HUNDRED DOLLARS ($100.00) on January 25, 1945 by check No. 14 against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving this amount for alleged traveling expenses.

"(b) TWO HUNDRED FIFTY DOLLARS ($250.00) on January 29, 1945 by check No. 18, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving the amount for alleged gifts to indigent persons.

"(c) FORTY DOLLARS ($40.00) that you received on February 3, 1945, by check No. 30, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving its amount for alleged prizes.

"(d) SIX DOLLARS ($6.00) that you received on February 3, 1945, by check No. 33, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving its amount for an alleged additional prize for the College of Agriculture.

"(e) FOUR HUNDRED DOLLARS ($400.00) which you received on January 29, 1945, by check No. 27, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving its amount for an alleged gift to the Firemen Organization.

"(f) TWO HUNDRED FIFTY DOLLARS ($250.00) which you received on February 6, 1945, by check No. 48, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving its amount for alleged miscellaneous expenses.

"(g) FORTY-FIVE DOLLARS ($45.00) which you received on February 6, 1945, by check No. 45, against Banco Crédito y Ahorro Ponceño, Mayagüez Branch, which you cashed and endorsed receiving its amount for alleged photographs."

The question for decision is whether any or all of said four charges against which a demurrer was set up adduce facts sufficient to justify the respondent's removal as Mayor of Mayagüez.

### FIRST CHARGE

For the purpose of the demurrer the respondent accepts that he executed the lease contract referred to in the first charge. He maintains, however, that this charge does not adduce facts because the authority to lease property belonging to the municipality is vested in the Board of Public Auctions and consequently that the Governor cannot complain against the mayor of a municipality for the execution of an act which the latter cannot legally carry out.

The argument itself is the best proof for its rebuttal. The charge alleges that he executed said contract without complying with the legal requirement of a previous public sale.

The respondent further contends in support of his demurrer that the streets and the public square do not belong exclusively to the municipality, but to the people, and that they are not subject to lease. In support of his theory the respondent invokes § 256 of the Civil Code.[6]

For the purpose of this opinion it is unnecessary to decide whether the property devoted to public use may be subject to a contract of lease. Assuming that it is, it cannot be leased without first complying with the requirement of a public auction; and supposing that it could not be subject to lease it is alleged that it was leased. Under either hypothesis the Mayor acted in violation of the law.

In our opinion it is clear that the first charge adduces facts, which if proved, will not only justify but demand respondent's removal.

### SECOND AND THIRD CHARGES

The grounds on which the demurrer rests as to the second charge are puerile. Since it was the Mayor who leased the property of the municipality, Matilde Nadal and Miguel A. Yáñez could not receive the lease rental unless he should authorize the lessor to deliver to those persons the money belonging to the Municipality. As we said in *In re Fonseca* v. *Gely,* 42 P.R.R. 189, invoked by the petitioner:

"That the money received as rental was turned over to the leader of a local orchestra and that the mayor did not convert it to his own use cannot excuse the misuse of money belonging to the municipality."

---

[6] Section 256 of the Civil Code:

"The property of public use in Porto Rico and the towns thereof comprises the Insular and local roads, the squares, streets, fountains and public waters, walks, and public works for general use, paid for by the said towns or from the Treasury of Porto Rico.

"All other property, possessed by either The People of Porto Rico or the municipalities, thereof, is common property for the use of the general and municipal governments (*bienes patrimoniales*), and shall be governed by the provisions of this Code."

Although it was not the duty of the Mayor, as such, to deposit the money in the municipal treasury, however, as maintained by the attorneys for the Governor, the Mayor was the executive chief of the municipality and it was his duty to see that said funds be deposited in the municipal treasury. What we have said with respect to the second charge is likewise applicable to the third. They both adduce sufficient facts to justify respondent's removal.

## Fourth Charge

A casual reading of the fourth charge will show its importance. The demurrer is based on the facts that the checks which the Mayor received and which were the proceeds of funds belonging to the municipality and which he endorsed and applied for alleged purposes not authorized by the Assembly were issued by other persons and that the latter and not the Mayor, are the ones really responsible. Indeed, it has been difficult for us to understand the ground of the demurrer as to this charge. In any event he is charged with having spent the money belonging to the municipality. This being so the doctrine of *In re Fonseca* v. *Gely, supra* is applicable.

As a general ground for the demurrer against the four charges, respondent relies on *Tugwell, Governor,* v. *Campos,* 65 P.R.R. 620. He maintains that it was decided there that charges similar to those in the present case are insufficient to justify the removal of the Mayor. We shall merely state that our decision in the *Campos* case, *supra,* is predicated on a manifest error in the weighing of the evidence and not on the sufficiency of the charges preferred.

Since this Court has reached the conclusion that the Municipal Assembly erred in granting the demurrer, we shall dismiss the appeal only as to the fifth charge and reverse the decision appealed from as to the first four charges and the case is remanded to the Municipal Assembly of Mayagüez

in order that without further excuse or pretext it shall immediately receive the evidence from both parties with respect to the first four charges and to decide the case on its merits.